DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Ernest C. Riley, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied his application for permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court. On March 17, 2005, the magistrate issued a decision including findings of fact and conclusions of law and therein recommended that this court issue a writ of mandamus. (Attached as Appendix A.) The magistrate concluded that relator was not ineligible for PTD compensation due to voluntary abandonment of the workforce, because he could not have foreseen his occupational disease claim due to the long latency period associated with his disease. The commission timely filed objections to the magistrate's decision, which objections are now before the court.
 {¶ 3} In its objections, the commission argues the magistrate erred in finding that relator was entitled to PTD compensation. In particular, the commission claims relator failed to provide evidence to establish that chronic obstructive pulmonary disease ("COPD") is an occupational disease with a long latency period. The commission argues the magistrate misinterpreted the Ohio Supreme Court's holdings in State ex rel.Liposchak v. Indus. Comm. (1995), 73 Ohio St.3d 194; 652 N.E.2d 753, 755
and State ex rel. Reliance Elec. v. Wright (2001), 92 Ohio St.3d 109,748 N.E.2d 1105, by finding the lack of foreseeability of the disease was the critical factor in determining eligibility for PTD compensation. Instead, the commission asserts that the aforementioned cases are inapplicable unless the claimant presents evidence that his occupational disease has a long latency period. We agree.
 {¶ 4} In Reliance, the Supreme Court of Ohio opined:
* * * [T]he principle that pre-PTD voluntary withdrawal from the job market precludes eligibility for PTD compensation has no application in cases involving long-latent occupational diseases that arise after the claimant abandons the job market. In this situation, we have expressly refused to find that "the claimant tacitly surrendered a right that did not exist and could not be foreseen." (Emphasis sic.)
Id. at 111 citing State ex rel. Liposchak v. Indus. Comm. (1995),73 Ohio St.3d 194, 196, 652 N.E.2d 753, 755. See, also, State ex rel.Vansuch v. Indus. Comm. (1998), 83 Ohio St.3d 558, 700 N.E.2d 1286.
 {¶ 5} Our reading of these cases reveal that the Supreme Court of Ohio relied on some evidence to first establish that the occupational disease at issue has a long latency period. Accordingly, we find that in this case, the relator must first establish whether COPD had a long latency period. The record reveals that relator has provided no evidence to demonstrate that COPD is a medical condition with a long latency period. Further, the occupational diseases found in Liposchak, Reliance andVansuch were different than the occupational disease in this case. Thus, we find the commission did not abuse its discretion in denying relator's PTD application.
 {¶ 6} Accordingly, we sustain the commission's objections to the magistrate's decision. We adopt the magistrate's findings of fact, reject the magistrate's conclusions of law, and hereby deny relator's request for a writ of mandamus.
Objections sustained; writ denied.
Bryant and McCormac, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
 State of Ohio ex rel. Ernest C. Riley, :
 Relator, :
 v. : No. 04AP-953
 Industrial Commission of Ohio : (REGULAR CALENDAR)
 and Amcast Industrial Corporation, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on March 17, 2005 Angela D. Marinakis, for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
Roetzel Andress, LPA, Charles D. Smith and Eric S. Bravo, for respondent Amcast Industrial Corporation.
 IN MANDAMUS {¶ 7} In this original action, relator, Ernest C. Riley, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 8} 1. From 1946 to 1984, relator was employed by Amcast Industrial Corporation ("Amcast") as a casting inspector at a foundry.
 {¶ 9} 2. On April 29, 1984, relator was laid off when Amcast closed the foundry.
 {¶ 10} 3. In May 1984, relator's application for unemployment compensation was approved.
 {¶ 11} 4. On March 18, 1985, relator elected to receive his Amcast pension effective April 1, 1985.
 {¶ 12} 5. On December 28, 1999, relator filed a workers' compensation claim alleging that he had acquired a chronic obstructive lung disease through his employment at Amcast.
 {¶ 13} Earlier, on July 22, 1999, Balusamy Subbiah, M.D., wrote:
This patient is under my care. He has severe obstructive lung disease but with bronchodilators, it improves moderately. He is a smoker and he also was exposed to a lot of dust in the past. He worked at Dayton Malleable in the casting section, working as a casting inspector. I think the work related exposure to dust is also contributing for his chronic obstructive lung disease along with his smoking. * * *
 {¶ 14} 7. On May 15, 2000, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), relator was examined by James R. Donovan, Jr., M.D. Dr. Donovan wrote: "Mr. Riley's history of tobacco use is the most likely cause of his alleged condition; the foundry exposures likely contributed to his condition, but to a lesser degree."
 {¶ 15} 8. Following a January 9, 2001 hearing, a district hearing officer ("DHO") issued an order allowing the industrial claim for "chronic obstructive pulmonary disease" ("COPD") based upon the reports of Drs. Subbiah and Donovan.
 {¶ 16} 9. Amcast administratively appealed the DHO order of January 9, 2001. Following a February 14, 2001 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The commission officially recognizes August 18, 1998 as the date of the COPD diagnosis.
 {¶ 17} 10. On November 13, 2002, relator filed an application for PTD compensation. In support, relator submitted a report dated August 29, 2002, from Dr. Elie Saab, stating:
Date of diagnosis: 8/18/98
Ernest Riley is permanently and totally disabled due to breathing problems resulting from Chronic Obstructive Pulmonary disease.
Symptoms include:
1) Shortness of breath
2) Wheezing
3) Crackles
4) Moderate clubbing of nails
Medication, while helpful, will not enable him to return to work in any capacity and Ernest is not a candidate for any vocational rehabilitation.
 {¶ 18} 11. On February 13, 2003, relator was examined, at Amcast's request, by Robert A. Cain, D.O. Dr. Cain opined that, considering only the allowed conditions of the claim, relator is not capable of sustained remunerative employment.
 {¶ 19} 12. On March 6, 2003, relator was examined, at the commission's request, by Deborah H. Gillispie, M.D. Dr. Gillispie reported:
HISTORY OF PRESENTING INJURY
Regarding claim number 98-632019 the claimant states that starting in approximately 1984 he began developing "breathing problems." The claimant states that approximately four years later in 1988 he started seeing local physicians because of his breathing problems. It was in 1996 that the clamant was referred to a lung specialist regarding his problems in order to obtain medical clearance for a needed surgery. At that time the claimant was diagnosed with severe obstructive lung disease. In 1998 the claimant first filed claim on this illness.
The claimant had been employed for over 37 years at Foundry working as a list operator inspector. This required exposure to several types of metal and silica dust. He also has a 30+ pack-year history of smoking, both cigarettes and pipes.
* * *
* * * Based upon the physical exam and pulmonary function test of this claimant, he has a moderately severe primarily obstructive lung process. It is the opinion of this examiner that his lung disease is primarily related to his 30+ pack-year history of smoking. However, his exposure to occupational dust may have been a contributing factor and exacerbated the process. It is impossible to allocate a percentage of impairment to the two different processes. Applying the results of this claimant's exam and pulmonary function test to table 8, page 5/162, of the AMA Guides, this claimant falls into class IV, which allows a 51% to 100% impairment of the whole person. It is my opinion that this claimant be given a 65% whole-person impairment.
* * *
* * * [T]his claimant is not capable of physical work activity. Due to the claimant's severe lung disease, even activities of daily living leave him short of breath. He will never be able to return to any type of gainful employment.
 {¶ 20} 13. Following a September 11, 2003 hearing, an SHO issued an order denying relator's PTD application. The SHO's order states:
Based on the premise that the claim has been allowed for Chronic Obstructive Pulmonary Disease, the following reports from Dr. Saab dated 08/29/2002, Dr. Cain dated 02/13/2003, and Dr. Gillispie dated 03/10/2003 all support that the allowed condition of Chronic Obstructive Pulmonary Disease does render the claimant permanently and totally disabled, and this issue was not argued at the hearing.
The medical evidence further supports that this injured worker's allowed condition is not attributable to silicosis, or to any other form of pneumoconioses, per report of Dr. Gillispie, dated 03/10/2003, stating the same and Dr. Goyal's report, dated 07/27/2000. Dr. Goyle states "there is no evidence of restrictive lung disease or silicosis". Dr. Gillispie states that "there is no evidence on chest x-rays or pulmonary function test to attribute this claimant's disease process to silicosis or any other pneumoconioses disease. He goes on to state that the only study which alludes to restrictive lung disease is a CT Scan dated 09/29/2000, which was not included in the claimant's file.
The facts in this case indicate that the injured worker quit working with this employer on 05/05/1984 when the plant closed, and he was placed on permanent lay-off status. The claimant received unemployment benefits for a period of time not exceeding a year thereafter. The injured worker testified that during this time he did seek other employment, but was not willing to move to find other employment. The evidence indicates that the plant was subsequently bought and reopened in 1996. The claimant testified that he did not seek reemployment at that re-opened facility. The clamant opted for retirement benefits as of 04/01/1985.
At hearing, the employer argues that the claimant retired, in this case, prior to becoming permanently and totally disabled by Chronic Obstructive Pulmonary Disease, and therefore is precluded from eligibility for permanent and total disability benefits. The Staff Hearing Officer agrees.
The evidence supports that the claimant's retirement in this case was voluntary, and was not related to the allowed conditions in this claim. The Staff Hearing Officer finds that, while the claimant testified that he looked for work following the plant closure in April of 1984, the evidence does not support that the injured worker made a good faith effort to seek reemployment. While the injured worker stated that he had sought employment "here and there", he never found a job. He further testified at hearing that he was unwilling to move to find employment at any other location, such as Portsmouth, Columbus, or Cincinnati. The injured worker also failed to seek employment at the foundry, which reopened in 1986. The claimant accepted retirement benefits per signed copy stating so, effective 04/01/1985.
The only exception, per case law, which supports that permanent total disability benefits are not precluded, despite claimant's voluntary retirement, is in cases where the occupational lung disease has an "extremely long latency period" State ex rel. Reliance Electric Companyv. Wright (2001), 92 Ohio St.3d 109. No evidence in this case has been presented to demonstrate that Chronic Obstructive Pulmonary Disease is an occupational disease with an "extremely long latency period". Case law has established that asbestosis is an an [sic] occupational disease that does have a long latency period. Cases in point include State ex rel.Liposchak v. Indus. Comm. (1995), 73 Ohio St.3d 194, and State ex rel.VanSuch v. Indus. Comm. (1998), 83 Ohio St.3d 558[.] Furthermore, the medical evidence in this case indicates that the condition of Chronic Obstructive Pulmonary Disease had not risen nor manifested itself at the time of his 04/01/1985 retirement. Mr. Riley's testimony at hearing today was that he was not aware of his condition until 1998. This testimony confirms that Mr. Riley's retirement was not related to the allowed conditions in this claim.
The Staff Hearing Officer finds that the claimant's application for permanent and total disability is DENIED. The claimant is precluded from eligibility for permanent total compensation for reason that he voluntarily retired. The evidence shows that he did not make a good faith effort to seek re-employment. His retirement was not related to the allowed conditions in this claim. Finally, the injured worker has failed to prove that he suffers from an occupational disease with a "long latency period", in order to qualify for an exception to this current case law.
(Emphasis sic.)
 {¶ 21} 14. On November 14, 2003, the commission mailed an order denying relator's request for reconsideration of the SHO order of September 11, 2003.
 {¶ 22} 15. On September 20, 2004, relator, Ernest C. Riley, filed this mandamus action.
Conclusions of Law:
 {¶ 23} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 24} Paragraphs two and three of the syllabus of State ex rel. BakerMaterial Handling Corp. v. Indus. Comm. (1994), 69 Ohio St.3d 202, state:
An employee who retires prior to becoming permanently and totally disabled is precluded from eligibility for permanent total disability compensation only if the retirement is voluntary and constitutes an abandonment of the entire job market. * * *
An employee who retires subsequent to becoming permanently and totally disabled is not precluded from eligibility for permanent total disability compensation regardless of the nature or extent of the retirement. * * *
 {¶ 25} Ohio Adm. Code 4121-3-34(D) sets forth the commission's guidelines for the adjudication of PTD applications. Ohio Adm. Code4121-3-34(D)(1)(d) states:
If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.
 {¶ 26} The commission apparently reads Ohio Adm. Code 4121-3-34(D)(1)(d) in light of Baker thus rendering a distinction between a pre-PTD retirement and a post-PTD retirement.
 {¶ 27} Exceptions to the Baker rule have occurred in State ex rel.Liposchak v. Indus. Comm. (1995), 73 Ohio St.3d 194, and two other cases that follow.
 {¶ 28} Robert Liposchak began working for Wheeling-Pittsburgh Steel in 1945. In 1980, Liposchak was caught bringing a handgun into the plant. Faced with disciplinary action, he quit. Liposchak's work activities after that are unclear. He, at best, worked sporadic odd jobs and allegedly cared for an invalid couple until their death.
 {¶ 29} In 1992, 12 years after he quit Wheeling-Pittsburgh Steel, Liposchak was diagnosed with malignant mesothelioma. A workers' compensation claim was allowed after it was determined that the condition arose from his employment. A short time later he applied for PTD compensation. The commission denied Liposchak's application on grounds that he had voluntarily removed himself from the active workforce in April 1980. Based on these facts, the Supreme Court of Ohio ordered the commission to vacate its order and to enter an order that declares Liposchak permanently and totally disabled.
 {¶ 30} The Liposchak court explained, at 196:
First, claimant suffers from a condition with an extremely long latency period. As noted in State Indus. Ins. Sys. v. Jesch (1985), 101 Nev. 690,692, 709 P.2d 172, 174, mesothelioma, at a minimum, has a latency period of twenty-five to thirty years. Latency periods of up to forty years are not uncommon. * * *
Second, claimant did not have an allowed workers' compensation claim for his occupational disease at the time he left Wheeling-Pittsburgh Steel. * * * Unquestionably, claimant committed an extremely serious offense by taking a gun to work, irrespective of the plant's location in what he perceived to be an unsafe area. Nevertheless, we cannot find that in so doing, the claimant tacitly surrendered a right that did not existand could not be foreseen.
(Emphasis sic.)
 {¶ 31} In State ex rel. Vansuch v. Indus. Comm. (1998),83 Ohio St.3d 558, the court followed its prior decision in Liposchak.
John Vansuch worked for 40 years as a layout man with Wean United, Inc. During that time, he was exposed to asbestos. In 1981, Vansuch took nondisability retirement and never worked again.
 {¶ 32} In 1991, Vansuch was diagnosed with asbestosis and his workers' compensation claim was allowed for asbestosis. In 1992, he moved for PTD compensation. The commission denied the application and Vansuch filed a mandamus action in this court. Citing Liposchak, this court ordered the commission to find Vansuch permanently and totally disabled. On appeal to the Supreme Court of Ohio, this court's decision was affirmed.
 {¶ 33} In State ex rel. Reliance Electric Co. v. Wright (2001),92 Ohio St.3d 109, the court followed its prior decisions in Liposchak
and Vansuch.
 {¶ 34} Glen C. Wright began his employment as a core maker for Reliance in 1952. He continued in that capacity until the plant closed in December 1986. Wright then received unemployment compensation for six months following his lay off, after which he took a regular (nondisability) pension from Reliance at age 59.
 {¶ 35} On October 16, 1996, Wright was diagnosed with pneumoconiosis. On January 30, 1997, Wright filed a workers' compensation claim which was allowed for pneumoconiosis. On January 27, 1998, Wright filed a PTD application. The commission granted the application.
 {¶ 36} On December 21, 1998, Reliance filed a mandamus complaint in this court requesting that this court direct the commission to vacate the order granting Wright PTD compensation. This court denied the writ and Reliance appealed as of right to the Supreme Court of Ohio.
 {¶ 37} Citing its prior decisions in Liposchak and Vansuch, theReliance court summarized those holdings, at 111:
* * * [T]he principle that pre-PTD voluntary withdrawal from the job market precludes eligibility for PTD compensation has no application in cases involving long-latent occupational diseases that arise after the claimant abandons the job market. In this situation, we have expressly refused to find that "the claimant tacitly surrendered a right that did not exist and could not be foreseen." * * *
(Emphasis sic.)
 {¶ 38} Finding that the commission had correctly held that Wright was eligible for PTD, the Reliance court explained, at 112:
Wright allegedly withdrew from the labor market sometime between the end of 1986 and the middle of 1988. At that time, however, there was no indication that Wright either suffered from or had a compensable claim for pneumoconiosis. He was not diagnosed with pneumoconiosis until 1996, and he had no allowed workers' compensation claim for pneumoconiosis until 1997. Thus, under Liposchak and Vansuch, Wright could not have surrendered his eligibility for PTD compensation by voluntarily abandoning the job market in 1986, 1987, or 1988. Accordingly, we agree * * * that it would be pointless to force the commission to further consider whether Wright voluntarily withdrew from the labor force at a time when such a departure could not have affected his eligibility for PTD compensation.
 {¶ 39} In the magistrate's view, the principle set forth inLiposchak, Vansuch, and Reliance compellingly applies in this case.
 {¶ 40} Relator, Ernest C. Riley, can be said to have voluntarily abandoned the workforce on or about April 1, 1985, when he elected to receive his Amcast pension and, thereafter, never returned to the workforce.
 {¶ 41} On August 18, 1998, some 14 years later, relator was diagnosed with COPD. In December 1999, he filed a workers' compensation claim which was finally allowed for COPD in February 2001. In November 2002, relator filed his PTD application which the commission denied on grounds that he had voluntarily removed himself from the workforce prior to becoming PTD.
 {¶ 42} It is undisputed that relator did not have a workers' compensation claim for COPD at the time he took his Amcast pension in April 1985. Nor can it be reasonably argued that relator could have foreseen a claim for COPD in 1985. Accordingly, when relator quit the workforce, he could not have "tacitly surrendered a right that did not exist and could not be foreseen." Liposchak, at 196.
 {¶ 43} According to respondent, this court cannot hold that relator is eligible for PTD under the Liposchak, Vansuch, and Reliance line of cases because there is no medical evidence in the record upon which the commission can determine the latency period of COPD.
 {¶ 44} In the magistrate's view, the lack of such evidence does not detract from the fact that, in 1985, relator could not have foreseen that he would have an industrial claim for COPD. In the Liposchak, Vansuch,
and Reliance line of cases, the lack of foreseeability of a future workers' compensation claim at the time of the workforce abandonment was caused by the long latency period of the occupational disease at issue in each case. Lack of foreseeability is the critical factor in those cases. Here, regardless of the latency period of COPD, the facts clearly show that relator could not have foreseen his workers' compensation claim at the time he abandoned the workforce.
 {¶ 45} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's PTD application, and to enter an order granting the application.