[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 194.]

THE STATE EX REL. LIPOSCHAK *v.* INDUSTRIAL COMMISSION OF OHIO.

[Cite as *State ex rel. Liposchak v. Indus. Comm.*, 1995-Ohio-138.]

*Workers' compensation—Application for permanent total disability compensation—Claimant diagnosed with malignant mesothelioma twelve years after resigning in lieu of disciplinary action—Industrial Commission errs in denying compensation when claimant suffers from a condition with an extremely long latency period.*

(No. 95-391—Submitted April 24, 1995—Decided August 16, 1995.)

IN MANDAMUS.

―――――――――――

{¶ 1} Relator-claimant, Robert E. Liposchak, began working for respondent Wheeling-Pittsburgh Steel in 1945. In 1980, claimant was caught bringing a handgun into the plant. Faced with disciplinary action, claimant quit. Claimant's work activities after that are unclear. Claimant, at best, worked sporadic odd jobs and allegedly cared for an invalid couple until their death.

{¶ 2} In 1992, twelve years after he quit Wheeling-Pittsburgh Steel, claimant was diagnosed with malignant mesothelioma. A workers' compensation claim was allowed after it was determined that the condition arose from claimant's employment. A short time later, claimant applied to respondent, Industrial Commission of Ohio, for permanent total disability compensation. The application was denied after the commission found that:

"[C]laimant voluntarily removed himself from the active work force. The claimant retired on 4-4-80 and has remained unemployed to the present. Although the claimant's representative argued that caring for the elderly couple was employment, there was no evidence presented supporting the existence of an employment relationship between the parties.

"Bequeathment of the home to the claimant in itself is insufficient to establish an employer/employee relationship.

"The commission finds that the claimant removed himself from the active workforce on 4-4-80. Therefore the claimant is not permanently and totally disabled."

{¶ 3} This cause is now before this court as an original action in mandamus to compel the commission to award him permanent total disability compensation.

————————————

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy*, for relator.

*Betty D. Montgomery*, Attorney General, and *Yolanda L. Barnes*, Assistant Attorney General, for respondent.

————————————

***Per Curiam.***

{¶ 4} Claimant's mesothelioma undeniably arose from his employment at Wheeling-Pittsburgh Steel. Claimant's mesothelioma undeniably prevents sustained remunerative employment. Medical impairment notwithstanding, permanent total disability may nonetheless be foreclosed if it is found that claimant voluntarily removed himself from the labor market prior to his permanent total disability application. *State ex rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202, 631 N.E.2d 138. Claimant initially challenges *Baker's* applicability. He alternatively argues that he never voluntarily abandoned the work force. For the reasons to follow, we order the commission to vacate its permanent total disability denial and to enter an order that declares claimant to be permanently and totally disabled.

{¶ 5} The existence of a causal relationship between an allowed condition and an inability to work underlies all successful requests for disability compensation. Problems can arise when another factor independently contributes

to the inability to return to relevant employment. We have characterized these factors as either involuntary or voluntary, with the latter precluding permanent total disability compensation when it constitutes an abandonment of the entire job market. *Baker, supra,* at paragraph two of the syllabus.

{¶ 6} In *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533, we classified as "voluntary," a departure from the work force that was precipitated by the claimant's imprisonment. We reasoned:

"While a prisoner's incarceration would not normally be considered a 'voluntary' act, one may be presumed to tacitly accept the consequences of his voluntary acts. When a person chooses to violate the law, he, by his own action, subjects himself to the punishment which the state has prescribed for that act." *Id.* at 44, 517 N.E.2d at 535.

{¶ 7} In *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 121, 623 N.E.2d 1202, 1204, we noted that "* * * firing can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character."

{¶ 8} We recognize that claimant was not technically fired, but resigned in lieu of such disciplinary action. This distinction is irrelevant. We do find, however, two significant distinctions between this case and both *Watts* and *Ashcraft.*

{¶ 9} First, claimant suffers from a condition with an extremely long latency period. As noted in *State Indus. Ins. Syst. v. Jesch* (1985), 101 Nev. 690, 692, 709 P.2d 172, 174, mesothelioma, at a minimum, has a latency period of twenty-five to thirty years. Latency periods of up to forty years are not uncommon. On at least two prior occasions we have recognized the unique workers' compensation problems that can arise from long-latency occupational diseases. See

*Caruso v. Aluminum Co. of Am*. (1984), 15 Ohio St.3d 306, 15 OBR 436, 473 N.E.2d 818; *Jacobs v. Teledyne, Inc*. (1988), 39 Ohio St.3d 168, 529 N.E.2d 1255.

{¶ 10} Second, claimant did not have an allowed workers' compensation claim for his occupational disease at the time he left Wheeling-Pittsburgh Steel. Again, his mesothelioma did not arise for another twelve years. Viewing these factors together, we decline to extend the reasoning that underlies *Watts* and *Ashcraft* to these facts. Unquestionably, claimant committed an extremely serious offense by taking a gun to work, irrespective of the plant's location in what he perceived to be an unsafe area. Nevertheless, we cannot find that in so doing, the claimant tacitly surrendered a right that did not exist *and* could not be foreseen.

{¶ 11} Accordingly, a writ of mandamus is granted.

*Writ granted.*

DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., WRIGHT and COOK, JJ., dissent.

————————————

**COOK, J. dissenting.**

{¶ 12} I respectfully dissent. Here we have a claimant who applied for permanent total disability compensation ("PTD") twelve years after voluntarily retiring (albeit in order to avoid being fired) and never having reentered the job market. According to the criteria set forth in *State ex rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202, 631 N.E.2d 138, paragraph two of the syllabus, this claimant should be ineligible for PTD. The majority opinion does not reach its contrary result by determining that either of these criteria from *Baker* is unmet. Rather, the latency period of mesothelioma is the factor employed by the majority to find Liposchak eligible for PTD. In effect, the opinion reasons that in order for the rule in *Baker* to apply, the claimant needs to have known that he was foregoing a PTD claim when retiring from the job and the job market entirely. The fallacy with this analysis is that PTD compensation is intended to

4

compensate for a claimant's probable future wage loss due to the total impairment of the claimant's earning capacity. Id. at 212, 631 N.E.2d at 146. While a worker may have a valid medical status for claiming PTD, if that person has already voluntarily abandoned the job market, the person has no future wage loss and therefore no basis for receiving PTD. This is the logical principle that evolves from the common law, set forth in Baker at paragraph two of the syllabus, *State ex rel. Chrysler Corp. v. Indus. Comm.* (1991), 62 Ohio St.3d 193, 580 N.E.2d 1082, and *State ex rel. CPC Group, Gen. Motors Corp. v. Indus. Comm.* (1990), 53 Ohio St.3d 209, 559 N.E.2d 1330.

Accordingly, I would deny the writ of mandamus.

MOYER, C.J., and WRIGHT, J., concur in the foregoing dissenting opinion.

_____