[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 694.]

THE STATE EX REL. WILLIAMS-LAKER, APPELLANT AND CROSS-APPELLEE, *v.*
INDUSTRIAL COMMISSION OF OHIO, APPELLEE AND CROSS-APPELLANT.

[Cite as *State ex rel. Williams-Laker v. Indus. Comm*., 1998-Ohio-169.]

*Workers' compensation—Claimant may recover wage-loss compensation for time absent from work, when.*

(No. 95-1320—Submitted October 20, 1997—Decided January 14, 1998.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No. 94APD05-709.

_____

{¶ 1} On July 13, 1989, appellant and cross-appellee-claimant Roberta Williams-Laker slipped and injured her back while in the scope of her employment as a collision body shop manager for Jim Collins Auto Body, Inc. ("Auto Body, Inc."). Despite this injury, Williams-Laker went back to work the next day. On August 17, 1989, Williams-Laker filed a claim seeking workers' compensation benefits for medical treatments. Auto Body, Inc. certified Williams-Laker's workers' compensation claim for "lumbrosacral strain/sprain L5 S1 disc bulging with associated radiculitis into the lower extremity," and the claim was approved.

{¶ 2} On August 20, 1990, Dr. Brunner submitted a C-84 Physician's Supplemental Report certifying Williams-Laker's temporary total disability from July 16, 1990 to July 30, 1990. An employer follow-up questionnaire, C-62-E, relates claimant's actual time off as being from July 23, 1990 to August 6, 1990. This appears to be the claimant's only actual period of temporary total disability. On May 8, 1991, Williams-Laker sought authorization to participate in a pain control clinic, which provided for epidural and myoneural blocks and other treatment for her injury. On September 24, 1991, Williams-Laker's request for treatment was authorized.

**{¶ 3}** The treatment was administered by the University Pain Control Center ("UPCC") and lasted from September 30, 1991 to approximately December 30, 1991. However, Williams-Laker continued receiving physical therapy until September 1992. Williams-Laker continued to work part time during the pain treatment at UPCC, taking Wednesdays and other extra hours off to receive treatments. The clinic apparently did not have evening or weekend hours.

**{¶ 4}** On March 4, 1993, Williams-Laker applied for wage-loss compensation under R.C. 4123.56(B), seeking reimbursement for the salary she lost while receiving the therapy for the July 13, 1989 injury. Williams-Laker sought lost wages for a period from March 4, 1991 to May 31, 1992. The order of the district hearing officer, upon which the commission ultimately relied in denying Williams-Laker's claim for lost wages, stated:

"It is the finding of the Hearing Officer that this claim has been previously allowed for LUMBOSACRAL STRAIN/SPRAIN.

"Claimant's application requesting wage loss compensation for the period 3-4-91 to 5-31-92, filed 3-4-93, is denied.

"The Hearing Officer finds that the claimant failed to establish any restrictions on claimant's employment due to physical limitations imposed by the industrial injury of 7-13-87."

**{¶ 5}** Williams-Laker then filed a mandamus action with the court of appeals alleging that the Industrial Commission's "finding that the claimant [Williams-Laker] was not entitled to wage loss benefits is not supported by the evidence of record and such finding constitutes an abuse of discretion." The court of appeals granted the writ on the portion of the claim which was supported by adequate evidence, stating:

"[I]t is the judgment and order of this court that a writ of mandamus issue * * * which compels the commission to vacate its order denying Ms. Williams-Laker all wage loss compensation and which compels the commission to enter a

new order granting the compensation for the period September 30, 1991 through December 30, 1991." Williams-Laker originally sought wage-loss compensation from March 4, 1991 to May 31, 1992, which was denied by the commission. In considering Williams-Laker's complaint for writ of mandamus, the appellate court found that the commission abused its discretion by denying the wage-loss compensation, but only for the period from September 30, 1991 to December 30, 1991. The limited period of the grant was based on the lack of medical evidence of any treatment at the pain clinic prior to September 30, 1991 or after December 30, 1991.

{¶ 6} This cause is now before this court upon an appeal and cross-appeal as of right.

———————————

*Becker, Reed, Tilton & Hastings* and *Dennis A. Becker*, for appellant and cross-appellee.

*Betty D. Montgomery*, Attorney General, and *Melanie Cornelius*, Assistant Attorney General, for appellee and cross-appellant.

———————————

**LUNDBERG STRATTON, J.**

{¶ 7} In granting the writ of mandamus, the appellate court determined that the Industrial Commission abused its discretion in failing to award wage-loss compensation to Williams-Laker. Therefore, we must determine whether the appellate court's issuance of the writ was proper.

{¶ 8} This is a case of first impression: whether an employee injured at work can receive wage-loss compensation for time missed for medical treatments pertaining to the workplace injury.

{¶ 9} There are two types of workers' compensation benefits involved in this case—medical benefits (R.C. 4123.54), which the commission approved and

Williams-Laker has received, and wage-loss benefits (R.C. 4123.56[B]), which are at issue in the case at bar.

{¶ 10} The crux of Williams-Laker's argument is that she is entitled to wage-loss benefits because her workplace injury caused her to need treatment, and in order to attend these treatments she had to miss work because of the unavailability of the therapy during nonworking hours. The commission argues that Williams-Laker was medically able to work without restrictions and therefore did not suffer a *compensable* wage loss.

{¶ 11} Williams-Laker alleges that she is entitled to wage-loss benefits pursuant to R.C. 4123.56(B), which provides:

"Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than his former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, he shall receive compensation * * * [as a percentage of his weekly wage]."

{¶ 12} Williams-Laker cites former Ohio Adm.Code 4121-3-32(D)(2), a rule promulgated pursuant to R.C. 4123.56(B), which allows wage-loss benefits when "the employee returns to [her] former position but suffers a wage loss." Williams-Laker claims that former Ohio Adm.Code 4121-3-32(D)(2) supports her claim for wage-loss benefits because "she returned to her former position but suffered a wage loss nonetheless." Williams-Laker acknowledges that in order to receive wage-loss benefits, "the claimant must show that he or she has suffered diminished wages as a result of a medical impairment that is causally related to the industrial injury." Williams-Laker then asserts that she unequivocally suffered a loss of earnings due to her participation in the prescribed medical treatment for the allowed condition.

{¶ 13} In order to recover for wage loss, a claimant must prove actual wage loss and causal connection to his or her injury. *State ex rel. Reamer v. Indus. Comm.*

4

(1997), 77 Ohio St.3d 450, 452, 674 N.E.2d 1384, 1385. Another prerequisite to recover wage loss is proof that a medical inability prevents the claimant from working or reduces the claimant's capacity to work. *State ex rel. Chora v. Indus. Comm.* (1996), 74 Ohio St.3d 238, 241, 658 N.E.2d 276, 278. Therefore, if the reason for a claimant's absence from work, or physical limitation to complete work, is not due to "medical inability," then there is no causal connection between the work-related injury and any time absent from work so as to justify wage-loss compensation. See *State ex rel. The Andersons v. Indus. Comm.* (1992), 64 Ohio St.3d 539, 542, 597 N.E.2d 143, 146. Accordingly, we hold that when a claimant suffers a work-related injury, receives workers' compensation benefits therefor, and the claimant misses work to receive prescribed, approved treatments for the injury, that claimant may recover wage-loss compensation for the time absent from work only if the claimant proves (1) that the treatment was medically necessary for the claimant to perform his or her job, (2) that without the treatment he or she could not continue to work full time, and (3) that treatment was available only during the claimant's hours of employment.

{¶ 14} In the case at bar, Williams-Laker missed approximately ten hours of work per week for her treatment at UPCC between September 30, 1991 and December 30, 1991. Without question, Williams-Laker's injury was work-related and the commission authorized medical benefits for treatment of her injury. Further, there is no doubt that Williams-Laker had some wage loss during her absence from work in order to attend these treatments. In fact, her employer agreed to her period of absence for medical treatments and did not oppose the wage-loss claim.

{¶ 15} The issue then becomes whether the treatment was medically necessary for her to work. The record reveals that Dr. Richard V. Gregg, Director of UPCC, requested medical treatment for Williams-Laker on July 8, 1991, stating that "this patient would benefit most from our outpatient therapy program." Dr.

Patrick J. Brunner, Williams-Laker's treating physician, in a letter dated September 17, 1993 verifying that he had recommended the program and that the patient benefited significantly from it, wrote:

"Due to the *available hours* at the Center, *without taking the patient off of work* and *putting her on temporary total disability,* she had to miss several hours of work [per week]. * * *

"This treatment was recommended by me and, no doubt, has helped the patient, since at the present time, she is able to work full time with no restrictions and has had no loss of work. As stated above, her only other alternative would have been to take the patient off of work full time and collect temporary/total disability." (Emphasis added.)

{¶ 16} Therefore, in this particular instance, a clear inference can be drawn that the treatments were medically necessary for Williams-Laker to continue to work, and that part-time work coupled with the treatment was the least restrictive alternative to temporary total disability compensation.[1] This result also comports with the general policy behind temporary disability compensation of encouraging injured employees to get back to work as soon as possible, commensurate with their medical abilities. *Savage v. Claussner Hosiery Co.* (Ky.1964), 379 S.W.2d 473.

{¶ 17} A contrary finding would encourage greater use of temporary total status to obtain necessary treatments and discourage employees from getting back to work. This result would be less acceptable for employers and employees alike.

{¶ 18} We note that this opinion should *not* be interpreted to allow a claimant to voluntarily take off work to receive elective treatment and receive wage-loss compensation for the time absent from work. Rather, on the rare

---

1. We do not condone wage-loss compensation to a worker for taking time off to receive treatments for a work-related injury if the treatment provider has treatment times available that will not interfere with the claimant's work hours. Accordingly, to facilitate review of this type of wage-loss claim, we encourage the parties to develop the record with regard to the treatment provider's available hours.

occasions where an injured worker who is prescribed treatment for a work-related injury, which is medically necessary for the claimant to perform his or her job, without which the claimant could not continue to work full time, and treatment is available only during the claimant's work hours, the claimant can recover wage-loss compensation for the time that the claimant is absent work to receive the treatment.

{¶ 19} Williams-Laker has established through Dr. Gregg's and Dr. Brunner's reports that her treatments for her approved work-related injury were medically necessary for her to be able to perform her job without limitation during the period of her treatment at UPCC from September 30, 1991 to December 30, 1991, and that the treatments were only available during her hours of employment.

{¶ 20} However, Williams-Laker failed to present any adequate medical testimony or evidence that her wage losses outside the actual period of treatment at UPCC were medically necessary. No doctor's reports explain why she had reduced wages before she began such treatments at UPCC. Williams-Laker must still carry the burden of proof on all aspects of her claim. Therefore, Williams-Laker's wage-loss compensation is limited to the time of treatment at UPCC from September 30, 1991 to December 30, 1991.

{¶ 21} We find that the commission abused its discretion in denying wage-loss compensation from September 30, 1991 to December 30, 1991 based on the evidence presented. Accordingly, we affirm the court of appeals' order granting the writ of mandamus compelling the commission to award Williams-Laker wage-loss compensation.

*Judgment affirmed.*

RESNICK and F.E. SWEENEY, JJ., concur.

DOUGLAS and PFEIFER, JJ., concur in judgment only.

MOYER, C.J., and COOK, J., dissent.

———————————

**COOK, J., dissenting.**

**{¶ 22}** Because I believe the commission did not abuse its discretion in denying wage-loss compensation, I respectfully dissent. By allowing payment of wage-loss compensation without medical evidence that absence from work and reduced earnings are the product of a medical impairment, the majority authorizes payment of such compensation beyond the scope of R.C. 4123.56.

**{¶ 23}** The majority's allowance of wage-loss compensation for time absent from work to receive prescribed, approved treatment may encourage injured employees to return to work as soon as possible, but it is contrary to the statutory language and decisional law on the subject. It ignores that wage-loss compensation, like permanent total and temporary total disability compensation, requires a medical impairment. *State ex rel. Pepsi-Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 215, 648 N.E.2d 827, 832; *State ex rel. Liposchak v. Indus. Comm.* (1995), 73 Ohio St.3d 194, 195, 652 N.E.2d 753, 755. A medical impairment does not encompass just any medically related impediment to work—the impediment instead must be a "physical impairment of *function*" to perform work. (Emphasis added.) *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 171, 31 OBR 369, 373, 509 N.E.2d 946, 950. More specifically, impairment means "the amount of a claimant's anatomical and/or mental loss of function" as determined by medical professionals according to accepted medical and scientific standards. *Id.; State ex rel. Dallas v. Indus. Comm.* (1984), 11 Ohio St.3d 193, 194, 11 OBR 504, 505, 464 N.E.2d 567, 568.

**{¶ 24}** Here, Williams-Laker has not established a functional inability to work full-time hours. Rather, the evidence shows that she worked part-time to accommodate her doctors' schedules and to improve her injury-induced condition. Medical therapy to improve the lasting effects of an industrial injury, where the condition does not presently affect the claimant's performance, is not a medical impairment for which wage-loss compensation is available.

{¶ 25} Accordingly, the commission's decision denying this award was not an abuse of discretion.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____