DECISION
{¶ 1} Relator, E.I. DuPont DeNemours Company, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting permanent total disability ("PTD") compensation to respondent, Ferrall L. Limle ("claimant"), and ordering the commission to find that claimant is not entitled to that compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) Relator filed objections to the magistrate's decision, essentially presenting the same arguments he made before the magistrate. However, we agree with the magistrate's analysis of those arguments, as well as her legal conclusions.
 {¶ 3} First, contrary to relator's first objection, we agree with the magistrate that some evidence existed to support the commission's finding that the allowable condition alone rendered claimant incapable of sustained remunerative employment. In particular, we note that Dr. Corriveau's physical strength rating report expressly states: "My opinion of the injured worker's physical strength is indicated below and is based solely on the allowed condition(s) that falls within my specialty." Dr. Corriveau's report constituted some evidence upon which the commission could rely to make its finding.
 {¶ 4} Second, contrary to relator's second objection, we agree with the magistrate that claimant's retirement in 1992 does not preclude PTD compensation, for two reasons: (1) under Stateex rel. Liposchak v. Indus. Comm. (1995), 73 Ohio St.3d 194, retirement does not preclude compensation in cases involving long-latent occupational diseases; and (2) claimant did not abandon the job market entirely in 1992 because he worked part-time for the Zane Trace School District from 1993 to 2003.
 {¶ 5} For these reasons, we overrule relator's objections to the magistrate's decision. Having reviewed the evidence independently, and finding no error of law or other defect on the face of the magistrate's decision, this court adopts the decision as its own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Objections overruled, Fwrit of mandamus denied.
Bryant and Travis, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. : E.I. DuPont DeNemours Co., : :
Relator, : :
v. : No. 05AP-944 :
Industrial Commission of Ohio : and Ferrall L. Limle, : Respondents. :
 MAGISTRATE'S DECISION Rendered on February 28, 2006 Vorys, Sater, Seymour and Pease LLP, and Robert E. Tait,
for relator.
Jim Petro, Attorney General, and Sandra E. Pinkerton, for respondent Industrial Commission of Ohio.
Butler, Cincione DiCuccio, and Matthew P. Cincione, for respondent Ferrall L. Limle.
 IN MANDAMUS {¶ 6} Relator, E.I. DuPont DeNemours Co., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Ferrall L. Limle ("claimant") and ordering the commission to find that claimant is not entitled to that compensation.
Findings of Fact:
 {¶ 7} 1. Claimant began working for relator in 1954. Claimant worked for relator until February 27, 1970, at which time claimant left to pursue other employment opportunities. Thereafter, claimant returned to work with relator in April 1981 and worked for relator until May 10, 1992. After he retired, claimant worked cutting grass during the summers from 1993 until 2003. Specifically, claimant cut grass for the Zane Trace Local School District in 2002 and 2003. Claimant has not worked since the summer of 2003.
 {¶ 8} 2. During his employment with relator, claimant was exposed to asbestos.
 {¶ 9} 3. According to the July 16, 2002 report of William M. Chinn, M.D., claimant was seen by Dr. Chinn on three occasions, beginning in 1985, for asbestos-related assessments. Specifically, Dr. Chinn stated as follows:
In 1985 and again in 1992 my assessment for Mr. Limle was that he had no evidence of the pneumoconiosis asbestosis but did have bilateral pleural thickening in a distribution that was consistent with asbestos exposure. Mr. Limle did have asbestos exposures documented during his employment at DuPont over many years.
* * *
Review of a CT scan from Grant Hospital and a subsequent high resolution CT scan performed at Berger Hospital on 6/13/01 revealed the presence of interstitial lung disease bilaterally in both lung bases, somewhat greater on the left side than on the right, as well as the presence of significant, very prominent, calcified pleural plaques in the diaphrag-matic pleura. * * *
The impression from his CT scan was that Mr. Limle did meet the radiographic criteria for the diagnosis of pneumo-coniosis asbestos as well as significant pleural thickening which was asbestos related.
* * *
In conclusion, Mr. Limle, based on his exposures to aerosolized asbestos dust at DuPont over a long history of employment does indeed manifest radiographic and clinical evidence of the pneumoconiosis asbestosis as well as very significant bilateral pleural thickening in a distribution con-sistent with an asbestos etiology.
 {¶ 10} 4. In August 2001, claimant filed an FROI-1 with relator and relator certified his claim for "pneumoconiosis asbestosis/pleural disease."
 {¶ 11} 5. On November 10, 2004, claimant filed an application for PTD compensation. Claimant's application was supported by the June 17, 2004 report of Joseph C. Bennett, M.D. In that report, Dr. Bennett stated:
Ferrall Leroy Limle is considered permanently and totally disabled. He does have a severe restrictive lung disorder from pulmonary asbestosis which contributes to this dis-ability claim. I do not anticipate that his lung condition will ever improve and do in fact suspect that it will continue to deteriorate over the ensuing years.
 {¶ 12} In a follow-up report dated August 31, 2004, Dr. Bennett noted the following during his examination of claimant:
He does have dyspnea with minimal exertion which has been attributed to his asbestosis and obstructive lung disease, plus reactive airways disease. He does only do light duties outdoors. He states he can walk about 1 city block before he needs to stop due to shortness of breath. He does sleep in a semi recumbent position. He states if he lies flat, his head become[s] congested and he can barely breath[e].
 {¶ 13} 6. Claimant also treated with Christopher S. Ryckman, M.D., beginning in August 2002. Claimant participated in pulmonary rehabilitation and an annual pulmonary function test while under Dr. Ryckman's care. In a report dated December 10, 2004, Dr. Ryckman stated:
I am writing at the request of Mr. Limle regarding his application for disability from a pulmonary standpoint. He has asbestosis with bilateral pleural plaquing that has resulted in a moderate restrictive lung disease that is con-tributing to a decrease in exercise capacity. Enclosed is a copy of his latest pulmonary functions. The restriction is of such a severity that he should qualify for disability.
 {¶ 14} 7. Claimant also was treated by Nicholas J. Davakis, M.D., who issued a report dated December 13, 2004, wherein he stated:
Ferrall Limle remains under my care for coronary artery disease status post coronary artery bypass surgery. As-bestos, valvular cardiac disease, and severe hypertension.
Mr. Limle remains significantly limited because of his multiple medical problems. He is on a very aggressive medical regimen and continues to deteriorate from both a pulmonary and cardiac standpoint. At this time, I would de-finitely consider him to be permanently and total[ly] disabled with no hope of improvement. * * *
 {¶ 15} 8. Claimant was examined by Michael L. Corriveau, M.D., on behalf of the commission. Dr. Corriveau noted claimant's past medical history as follows:
1. Coronary artery bypass grafting 1996.
2. Hypertension.
3. Diabetes mellitus.
4. Bilateral lower extremity arterial bypass grafting.
5. Macular degeneration.
6. Removal of ganglion cysts.
7. Hospitalization for digoxin toxicity.
Dr. Corriveau ultimately concluded:
LABORATORY EVALUATION: Chest x-ray reveals evidence of pleural plaquing as well as interstitial prominence. Spiro-metry reveals forced vital capacity of 2.12L or 45% of predicted, FEV1 of 1.76L or 49% of predicted.
Mr. Ferrall Linle [sic] does carry a diagnosis of asbestosis with bilateral pleural plaquing. He has reached maximum medical improvement. According to the American Medical Association guides fourth edition page 107, Mr. Linle [sic] has 75% impairment of the whole person.
 {¶ 16} Dr. Corriveau completed a physical strength rating form wherein he indicated that claimant was not capable of physical work activity.
 {¶ 17} 9. Claimant was also examined by Herbert A. Grodner, M.D., who issued a report dated January 15, 2005. Dr. Grodner stated:
I do believe that Mr. Limle's respiratory symptoms and his respiratory physiology is both a combination of his cardiac status and his lung physiology as a result of pulmonary asbestosis and asbestos-related pleural disease. I believe that the major contributing factor to his restrictive lung disease is his asbestos-related lung abnormalities.
 {¶ 18} When asked whether the allowed conditions prohibit claimant from returning to any form of sustained remunerative employment, Dr. Grodner answered:
I do not feel that Mr. Limle would be capable of returning to any form of sustained remunerative employment. He has significant restrictive physiology as a result of his pulmonary asbestosis and this is causing significant symptoms char-acterized primarily as dyspnea on exertion and shortness of breath.
 {¶ 19} Thereafter, when asked whether claimant's inability to return to sustained remunerative employment was due solely to the allowed conditions, Dr. Grodner stated:
No. I believe that he has multi-factorial reasons for his inability to return to sustained remunerative employment. I believe it is a combination of his pneumoconiosis and pleural disease and the fact that he has significant cardiovascular disease. Some of his cardiovascular disease perhaps sec-ondary to his cardiovascular surgery may have contributed to his restrictive lung physiology, but certainly his symptoms of shortness of breath are, in part, due to his cardiovascular disease.
 {¶ 20} 10. Based upon the report of Dr. Corriveau, a staff hearing officer ("SHO") issued a tentative order granting claimant's application for PTD compensation.
 {¶ 21} 11. Relator filed an objection to the tentative order and the matter was heard before an SHO on June 28, 2005. At that time, the SHO granted relator's request for PTD compensation as follows:
It is the finding of the Staff Hearing Officer that the claimant is Permanently and Totally Disabled.
The Staff Hearing Officer relies upon the persuasive reports dated 06/17/2004, 12/10/2004, and 03/07/2005 and pre-pared by Doctors Joseph Bennett, Christopher Ryckman, and Michael Corriveau. These reports support the con-clusion that the allowed medical conditions in this claim, in and of themselves, render the claimant incapable of sus-tained remunerative employment.
Since it is the finding of the Staff Hearing Officer that the allowed conditions in this claim render the claimant in-capable of engaging in any sustained remunerative employ-ment on a purely medical basis, the Staff Hearing Officer does not find it necessary to consider the claimant's non-medical disability factors of age, education, and prior work experience. State, exrel. Libbey-Owens Ford v. Indus. Comm. (1991) 62 Ohio St.3d 6.
The claimant's retirement from the named employer is not found to bar receipt of permanent total disability for two reasons. First, when the claimant retired from Du Pont he did not entirely remove himself from the job market. The claim-ant testified that after his retirement from Du Pont he worked part-time for Zane Trace High School mowing grass. Since part-time employment can be a bar to receipt of permanent total employment (Allied EngergyBusiness Systems v. Seymour (1998), 83 O.S.3d 518) it can also be sufficient to find the claimant did not abandon the entire workforce when he retired.
Second, the claimant's disability is based on a slowly developing occupational disease. In Liposchak v. I.C. (1995),73 O.S.3d 194, the Ohio Supreme Court held that in situations where the claimant has a slowly developing occupational disease, retirement does not bar receipt of permanent total disability. The claimant's pneumoconiosis asbestosis and pleural diseases is found to fit in the category of a slowly developing occupational disease. Therefore, based on Liposchak it is found the claimant's retirement from Du Pont does not bar a permanent total disability award.
Based upon the above, as well as a careful consideration of all evidence in file and at the hearing, the Staff Hearing Officer concludes that the claimant is permanently and totally disabled.
The start date of the payment of the Permanent and Total Disability Compensation is 11/10/2002. The Staff Hearing Officer chooses this date because it precedes the date the permanent total disability application was filed by two years.
 {¶ 22} 12. Relator's request for reconsideration was denied by order of the commission mailed July 21, 2005.
 {¶ 23} 13. Thereafter, relator filed the instant mandamus action in this court.
Conclusion of Law:
 {¶ 24} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 25} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 26} In this mandamus action, relator challenges the commission's order granting claimant PTD compensation in the following two respects: (1) none of the medical evidence supports the conclusion that, based solely upon the allowed conditions, claimant is precluded from performing some sustained remunerative employment; and (2) claimant's voluntary retirement from relator precludes his eligibility for PTD compensation. For the reasons that follow, it is this magistrate's conclusion that relator's request for a writ of mandamus should be denied.
 {¶ 27} It is undisputed that, in order to qualify for PTD compensation, a claimant must establish that his inability to perform sustained remunerative employment arises solely from the allowed conditions in his claim. See State ex rel. Waddle v.Indus. Comm. (1993), 67 Ohio St.3d 452. However, the court went on to say that the mere presence of nonallowed conditions does not automatically bar PTD compensation provided that the claimant is disabled based solely upon the allowed conditions. Id. at 454.
 {¶ 28} It is relator's contention that the medical reports relied upon by the commission demonstrate that claimant is permanently and totally disabled due to the combined effects of multiple physical conditions: both allowed and nonallowed conditions. It is undisputed that claimant suffers from both allowed and nonallowed conditions in this case. Claimant has cardiovascular disease and has had stints put in place. Relator points out that Dr. Grodner had indicated that claimant's symptoms of shortness of breath are in part due to his cardiovascular disease.
 {¶ 29} As stated previously, the commission relied upon the reports of Drs. Bennett, Ryckman, and Corriveau in granting claimant's application for PTD compensation. Drs. Bennett and Ryckman have been treating claimant for an extended period of time. In his June 17, 2004 report, Dr. Bennett stated, in total, as follows:
Ferrall Leroy Limle is considered permanently and totally disabled. He does have a severe restrictive lung disorder from pulmonary asbestosis which contributes to this dis-ability claim. I do not anticipate that his lung condition will ever improve and do in fact suspect that it will continue to deteriorate over the ensuing years.
 {¶ 30} Dr. Bennett indicated that claimant has severe restrictive lung disorder due to his pulmonary asbestosis and that this contributes to his disability claim. Furthermore, Dr. Bennett indicated that claimant's lung disorder would continue to deteriorate over the years.
 {¶ 31} In his December 10, 2004 report, Dr. Ryckman stated, in pertinent part:
* * * He has asbestosis with bilateral pleural plaquing that has resulted in a moderate restrictive lung disease that is con-tributing to a decrease in exercise capacity. Enclosed is a copy of his latest pulmonary functions. The restriction is of such a severity that he should qualify for disability.
 {¶ 32} It is apparent from his report that although Dr. Ryckman opined that claimant's allowed conditions were disabling, he did not state that claimant was permanently and totally disabled due to the allowed conditions.
 {¶ 33} The record also contains the March 7, 2005 report of Dr. Corriveau who opined that claimant's allowed conditions had reached maximum medical improvement and that, utilizing the AMA Guides, claimant had a 75 percent whole person impairment due exclusively to the allowed conditions. Thereafter, Dr. Corriveau completed a physical strength rating form wherein he indicated that based solely on the allowed conditions, claimant is not capable of physical work activity.
 {¶ 34} Relator argues that, looking at the totality of claimant's medical conditions, both allowed and nonallowed, and reviewing all of the medical evidence in the record, claimant is disabled due to both allowed and nonallowed conditions. Specifically, relator points to the report of Dr. Grodner. However, the magistrate notes the following: (1) Dr. Grodner's report is internally inconsistent because, in one portion he asserts that claimant is permanently and totally disabled due solely to the allowed conditions while in another portion, he asserts that it is a combination of allowed and nonallowed conditions which render claimant permanently and totally disabled. As such, Dr. Grodner's report would not constitute some evidence upon which the commission could rely. (2) Although Dr. Bennett opined that claimant's allowed conditions contribute to his disability and Dr. Ryckman indicated that claimant's allowed conditions are of such severity that they should qualify claimant for disability, Dr. Corriveau, in an uncontroverted fashion, specifically stated that, due solely to the allowed conditions, claimant is not capable of any sustained remunerative work activity at any strength level. As such, contrary to relator's arguments, the magistrate finds that the record does contain some competent credible medical evidence upon which the commission was entitled to rely opining that claimant was permanently and totally disabled due solely to the allowed conditions.
 {¶ 35} Relator also contends that claimant should not be entitled to PTD compensation because claimant had voluntarily retired from relator in 1992 and that his voluntary abandonment precludes the payment of PTD compensation at a later date.
 {¶ 36} The magistrate finds that relator's argument is flawed in several respects. First, relator contends that claimant had no symptoms resulting from his exposure to asbestos at the time he retired. However, in the statement of facts prepared by the commission, the commission notes June 13, 2001 is the date of claimant's diagnosis citing a June 13, 2001 CT scan which "[r]evealed the presence of interstitial lung disease bilaterally in both lung bases, somewhat greater on the left side than on the right, as well as the presence of significant, very prominent, calcified pleural plaques in the diaphragmatic pleura." Furthermore, the record indicates that claimant was first examined and treated by Dr. Chinn in 1985 for bilateral pleural thickening in a distribution that was consistent with asbestos exposure. As such, relator's statement that, at the time he retired, claimant had no symptoms, is inaccurate.
 {¶ 37} Second, although claimant retired from his employment with relator in 1992, claimant did not abandon the entire workforce. See State ex rel. Baker v. Indus. Comm. (2000),87 Ohio St.3d 561. It is only where an employee voluntarily removes himself from the entire labor market for reasons unrelated to the allowed conditions the employee's voluntary retirement could preclude their entitlement to a future award of PTD compensation. Although claimant's employment after his retirement from relator was part-time in nature, relator cannot point to any case law which differentiates between full-time and part-time employment after retirement.
 {¶ 38} Third, although relator is quite critical of the Supreme Court of Ohio's decision in State ex rel. Liposchak v.Indus. Comm. (1995), 73 Ohio St.3d 194, and argues that, if the Supreme Court reconsidered this issue the court would determine it differently, this court is bound to apply the law, as set out by the Supreme Court, in the present case without regard to whether we agree with that decision or whether we believe the current judges on the Supreme Court would reach the same conclusion. As such, because asbestosis is recognized as an occupational disease with a long latency period, claimant's voluntary retirement from employment with relator for reasons unrelated to the allowed condition is not a bar to his receipt of PTD compensation in the future.
 {¶ 39} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in finding that claimant was entitled to PTD compensation and relator's request for a writ of mandamus should be denied.