DECISION
{¶ 1} Relator, Archie D. Williamson, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's application for permanent total disability ("PTD") compensation and to grant said compensation. *Page 2 
 {¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that the commission did not abuse its discretion in denying PTD compensation based upon medical evidence that relator could perform at a sedentary work level. In addition, the magistrate found that the commission did not abuse its discretion in assessing the nonmedical disability factors and concluding that relator was capable of sustained remunerative employment as evidenced by certain identified jobs relator could immediately perform. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision. In his first objection, relator argues that the magistrate's finding of fact number 9 fails to reference all of Carl Hartung's opinions — particularly his opinion that the combination of age, lack of transferable skills and length of time since he last worked "contribute to a significant probable decrease for re-entry to the workforce in any capacity." Although we agree with relator that the magistrate's finding of fact number 9 does not reference that part of Mr. Hartung's report, the magistrate's failure to include that reference in its findings of fact does not support mandamus relief. As noted by the magistrate, the commission relied on that part of Mr. Hartung's report that listed specific jobs relator could immediately perform. Therefore, there was some evidence supporting the commission's decision. Neither the commission nor the magistrate were required to include or address every aspect of Mr. Hartung's report. Therefore, we overrule relator's first objection. *Page 3 
 {¶ 4} In his second objection, relator argues that the magistrate erred when she found that the commission did not abuse its discretion in identifying jobs relator could perform that involve tasks and work settings wholly unrelated to relator's previous work. Again, we disagree. Even if relator's age would significantly reduce his ability to adapt and adjust to work that is not directly related to his previous work, the commission did not abuse its discretion in finding that relator was vocationally capable of sustained remunerative employment based upon the specific jobs Mr. Hartung listed that relator could immediately perform. Therefore, we overrule relator's second objection.
 {¶ 5} In his last objection, relator contends the magistrate erred in concluding as a matter of law that the commission did not abuse its discretion when it based its denial of PTD compensation on relator's failure to seek vocational rehabilitation. Relator cites State ex rel.Liposchak v. Indus. Comm. (1995), 73 Ohio St.3d 194 in support of his argument. For the reasons set forth in the magistrate's decision, we find relator's argument unpersuasive. As noted by the magistrate, inLiposchak, the claimant resigned from his employment for nonmedical reasons 12 years before he learned that he had developed mesothelioma. The commission denied claimant PTD compensation solely on grounds that he had voluntarily removed himself from employment. In granting the claimant mandamus relief and ordering the commission to grant him PTD compensation, the Liposchak court reasoned that the nature of the disease and its long latency undermines the theory that claimant had tacitly surrendered a right he did not know he had. However, inLiposchak, the medical evidence presented clearly indicated that claimant was unable to perform any sustained remunerative employment due to his mesothelioma. In the case at bar, the medical evidence establishes that relator can *Page 4 
perform at a sedentary work level. The commission considered the nonmedical disability factors and concluded that relator was capable of performing sustained remunerative employment and could immediately perform certain identified jobs.
 {¶ 6} We agree with the magistrate that Liposchak is inapplicable to the facts of this case. Although the commission noted that relator left his former jobs for nonmedical reasons, and neither sought rehabilitation or other employment after 1995, those factors were ancillary to the fundamental basis for its denial of PTD compensation — that relator retained the physical capacity to perform at a sedentary exertion level and could immediately perform certain identified jobs. Therefore, there was some evidence to support the commission's decision to deny PTD compensation based upon relator's ability to perform sustained remunerative employment. Accordingly, we overrule relator's third objection.
 {¶ 7} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 SADLER, P.J., and BRYANT, J., concur. *Page 5 
 APPENDIX A MAGISTRATE'S DECISION Rendered on January 10, 2007 IN MANDAMUS {¶ 8} Relator, Archie D. Williamson, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation. *Page 6 
Findings of Fact: {¶ 9} 1. Relator was employed by respondent Dana Corporation ("employer") for 34 years until the plant closed in 1993. Thereafter, relator drove a van for a Community Center from 1993 until 1995. At that time, he left that employment for reasons unrelated to any physical conditions.
 {¶ 10} 2. In May 2000, relator was diagnosed with pneumoconiosis.
 {¶ 11} 3. Relator has two claims with the employer: "L27953-22 — fracture, left metacarpal region," and "00-448870 — pneumoconiosis." It is undisputed that the fracture does not cause relator any problems at this time.
 {¶ 12} 4. On October 17, 2003, relator filed an application for PTD compensation. At the time, relator was 68 years of age. On his application, relator indicated that he graduated from high school, could read, write and perform basic math, and had specialized training for the specific job he performed for his employer. Relator also indicated that his physicians were David M. Atwell, M.D., and Ralph A. Juarez, M.D.
 {¶ 13} 5. In his November 14, 2001 report, Dr. Juarez reviewed the results of relator's recent chest X-ray which noted minimal increased interstitial markings in both lungs. Dr. Juarez indicated that a pulmonary function test was performed which revealed that relator had a moderate amount of obstructed airflow disease with negative bronchodilator response. Relator's total lung capacity was noted to be mildly reduced. Ultimately, Dr. Juarez concluded that chronic obstructive pulmonary disease accounted for up to 70 percent of relator's problems while his mild pneumoconiosis would represent approximately 30 percent of the remaining cause of his problems. *Page 7 
 {¶ 14} 6. In his July 28, 2003 report, Dr. Atwell concluded as follows:
 Mr. Williamson's pneumoconiosis is a permanent problem for him. His lung function is reasonably preserved. Total lung capacity is 6.67 or 90% of predicted with DL/VA of 55% of predicted. He could work at least at a desk job.
 However, he is unable to return to his former position of employment at Dana because of the pneumoconiosis.
 {¶ 15} 7. Relator was also examined by Barney M. Wisinger, M.D., who authored a report dated December 12, 2003. In that report, Dr. Wisinger ultimately concluded that relator had minimal medical restrictions due to his allowed condition, that 75 percent of relator's restrictions were due to emphysema while 25 percent of his restrictions were due to reactive airway disease related to the allowed condition.
 {¶ 16} 8. Relator was also examined by Harvey A. Popovich, M.D., who issued a report dated December 3, 2003. Dr. Popovich assessed a ten percent whole person impairment due to the pneumoconiosis and opined that relator was capable of performing work at a sedentary level.
 {¶ 17} 9. An employability assessment report was prepared by Carl W. Hartung, MRC, CRC, NCC, dated February 27, 2004. Based upon the reports of Drs. Atwell, Wisinger and Popovich, Hartung concluded that relator could immediately perform the following jobs: "Telemarketer, Assembler — Fabricator, Parking Lot Attendant, Pro-duction Inspector — Grader." Following appropriate academic remediation or brief skill training, Hartung opined that relator could perform the following additional jobs: "Cashier, Inspector — Tester." Hartung found that relator's high school education was sufficient to perform entry level sedentary work and that his work history demonstrates the ability to meet the demands of entry level work tasks. Hartung did note that relator's current age *Page 8 
would have a significant influence on his ability to adapt and adjust to work tasks in settings which are not directly related to his previous work.
 {¶ 18} 10. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on May 25, 2004, and resulted in an order denying that compensation. The SHO noted all the medical evidence in the record and specifically relied upon the reports of Drs. Wisinger and Popovich and concluded that relator does retain the residual functional capacity to perform sedentary work as such is defined in the Ohio Administrative Code. Thereafter, the SHO noted that relator had last worked with his employer in 1993 when he was 58 years old and left his part-time job as a van driver for reasons unrelated to any medical impairment. The SHO further noted that relator had not worked anywhere since 1995, nor had he made any attempts to rehabilitate himself vocationally. Thereafter, the SHO addressed the nonmedical disability factors. The SHO specifically relied upon the employability assessment prepared by Hartung. The SHO agreed that relator's high school education was sufficient to permit him to perform the basic activities of entry level work and that his previous work history demonstrated an ability to learn new job skills through on-the-job training. The SHO also agreed with Hartung's professional opinion that relator could immediately perform the jobs listed in the Hartung report and that, with brief skill training, relator could perform the additional jobs noted by Hartung.
 {¶ 19} 11. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought *Page 9 
and that the commission has a clear legal duty to provide such relief.State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v.Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate.State ex rel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 21} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 22} In this mandamus action, relator does not challenge the medical evidence. As such, relator concedes that the medical evidence shows that he is able to perform at a sedentary level of exertion. What relator does challenge is the commission's decision to *Page 10 
hold his lack of rehabilitation against him. Specifically, relator points to the Supreme Court of Ohio's decision in State ex rel.Liposchak v. Indus. Comm. (1995), 73 Ohio St.3d 194, and argues that because the court has long recognized that long-latency occupational disease cases present special problems in workers' compensation law, other reasonable and valid limitations on a claimant's receipt of compensation may not be applicable. Relator argues that the commission should not have held his failure to seek rehabilitation or seek other employment after he left his job as a van driver against him. Relator contends that the commission failed to take the special circumstances created by his long-latency occupational disease into account and therefore abused its discretion. For the reasons that follow, this magistrate disagrees.
 {¶ 23} In Liposchak, the claimant resigned from his employment for nonmedical reasons 12 years before he learned that he had developed mesothelioma. The commission denied claimant PTD compensation solely on grounds that he had voluntarily removed himself from employment.
 {¶ 24} In granting the claimant mandamus relief and ordering the commission to grant him PTD compensation, the Liposchak court reasoned that the nature of the disease and its long latency undermines the theory that claimant had tacitly surrendered a right he did not know he had.
 {¶ 25} However, in Liposchak, the medical evidence presented clearly indicated that claimant was unable to perform any sustained remunerative employment due to his mesothelioma. In the present case, the medical evidence establishes that relator can perform at a sedentary work level. The commission considered the nonmedical disability *Page 11 
factors and concluded that relator was capable of performing some sustained remunerative employment and identified certain jobs he could perform immediately.
 {¶ 26} In the present case, the commission did state certain facts which relator does not dispute: (1) relator left his former jobs for nonmedical reasons; and (2) relator neither sought rehabilitation nor other employment after 1995. Thereafter, the commission denied relator PTD compensation based upon medical evidence that he retained the physical capacity to perform at a sedentary exertion level and, following a discussion of the nonmedical disability factors, relator could immediately perform certain identified jobs.
 {¶ 27} To the extent that the commission and courts have found and may find in the future that long-latency occupational disease cases need to be looked at differently from typical workers' compensation cases, the instant case does not contain a fact pattern that requires a different outcome than that reached by the commission.
 {¶ 28} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and relator's request for a writ of mandamus should be denied.
 /s/ STEPHANIE BISCA BROOKS MAGISTRATE. *Page 1