DECISION
{¶ 1} Relator, Target Stores, commenced this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding respondent Denise J. Blank ("claimant") R.C.4123.56(B) wage loss compensation beginning June 23, 2004, and to enter an order denying said compensation.
 {¶ 2} This court referred the matter to a magistrate of this court, pursuant to former Civ.R. 53(C)[1] and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate recommended that this court issue a writ of mandamus ordering the commission to vacate its order to the extent that wage loss compensation is awarded beginning June 23, 2004, and to enter an amended order denying the wage loss claim. The commission and claimant have filed objections to the magistrate's decision. Thus, the matter is now before this court for a full, independent review.
 {¶ 3} By her first objection, claimant argues that the magistrate "erred in finding that there must be a written statement of physical restrictions from a physician in advance of a job change before wage loss compensation can be paid." Claimant's second objection asserts that the magistrate erred in finding that the commission abused its discretion in accepting claimant's testimony as to her inability to perform her position of employment at the time she accepted a job change with the employer of record. In sum, claimant essentially argues that the decision of the commission did not constitute an abuse of discretion, and the magistrate's conclusion to the contrary is erroneous. The commission objects to the decision of the magistrate, arguing that the magistrate erred by determining that claimant's demotion was "voluntary."
 {¶ 4} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that it has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 5} Regarding wage loss compensation, the Supreme Court of Ohio has stated as follows:
To qualify for wage loss compensation under [the workers' compensation] laws, "a claimant must * * * show that he or she has suffered diminished wages as a result of a medical impairment that is causally related to the industrial injury." * * * More specifically, "[c]laimant's allowed conditions must underlie claimant's inability to secure comparably paying employment in order for [claimant] to be entitled to benefits." * * * This means that a medical inability to secure comparably paying work is a prerequisite for wage loss eligibility.
(Citations omitted.) State ex rel. Frederick v. Licking Cty.Dept. of Human Serv. (1998), 82 Ohio St.3d 227, 230. Thus, a wage loss claim has two components: a reduction in wages and a causal relationship between the allowed condition and the wage loss. State ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118.
 {¶ 6} On December 1, 2003, claimant took a demotion from her job at Target as a "Level Three Supervisor (Team Leader)" to the position of an "Operator." In November 2004, claimant requested wage loss compensation from December 2003 to the date of the application, and further requested that it continue upon submission of competent proof. In support of her request, claimant ultimately submitted a total of three medical reports completed by Michael A. Poitinger, D.C., dated July 26, 2004, January 25, 2005, and January 29, 2005. The July 26, 2004, report listed June 23, 2004, as the date of the last medical examination, and provided restrictions on claimant's work activities. The January 25, 2005 report provided restrictions for September 1, 2003 through January 1, 2004, citing January 3, 2005, as the date of the last medical examination. The January 29, 2005, report provided restrictions from January 1, 2004 through June 22, 2004, citing January 3, 2005, as the date of the last medical examination.
 {¶ 7} After an appeal from a district hearing officer order, the matter was heard before a staff hearing officer ("SHO") on March 18, 2005. According to the SHO's order, claimant testified that she took the demotion primarily because she was physically unable to perform her work at the former position of employment. Relator contended that claimant voluntarily took the demotion due to a lifestyle change unrelated to her injury. In addition, claimant produced, through Dr. Poitinger's medical report dated January 25, 2005, medical evidence of her physical capacities and her medical restrictions for a period that corresponds to her decision to self-demote.
 {¶ 8} In assessing the evidence, the SHO determined as follows:
Considering the activity in this claim outlined above, and the long tenure of this employee, and the lack of any apparent problems prior to this injury, this Staff Hearing Officer does not find that the injured worker "voluntarily" took a demotion wholly unrelated to the allowed conditions in the instant claim. Clearly, the injured worker was having problems performing the former position of employment as noted by the several periods of wage loss compensation and temporary total disability compensation previously paid in this claim.
Based on medical evidence, wage information, and testimony at the hearing before the SHO, claimant was awarded wage loss compensation beginning June 23, 2004. However, the commission specifically found Dr. Poitinger's medical report dated January 25, 2005, as neither probative nor persuasive as to the period of the wage loss claim prior to June 23, 2004. Finding no probative and persuasive contemporaneous medical documentation to support claimant's contention that she was unable to perform the former position of employment from December 1, 2003, through June 22, 2004, the SHO denied payment of wage loss compensation for that time period. Therefore, the commission did not "find that claimant `voluntarily' took the demotion wholly unrelated to the allowed conditions in the instant claim[,]" even though it denied wage loss compensation from December 1, 2003, through June 22, 2004, because it found no probative and persuasive medical evidence corresponding to that period.
 {¶ 9} In his decision, the magistrate essentially reasoned that, in the absence of medical evidence regarding claimant's medical restrictions corresponding to the time of her demotion, and in the absence of any evidence of changed circumstances, claimant was precluded from receiving wage loss compensation beginning June 23, 2004. The magistrate found it significant that claimant has not challenged the commission's denial of her wage loss claim for the period prior to June 23, 2004. Thus, the magistrate resolved that this court should issue a writ of mandamus ordering the commission to vacate its order to the extent that wage loss compensation is awarded beginning June 23, 2004, and to enter an amended order denying the wage loss claim. We disagree with the conclusion reached by the magistrate.
 {¶ 10} We conclude that the evidence before the commission, including Dr. Poitinger's July 26, 2004, report, as well as claimant's testimony concerning her reasons for accepting the operator position, constitute "some evidence" upon which the commission properly relied to grant claimant's request for wage loss compensation beginning on June 23, 2004. Moreover, the commission's denial of wage loss compensation from December 1, 2003, through June 22, 2004, did not preclude it from awarding wage loss compensation beginning June 23, 2004. Furthermore, the fact that claimant does not ask us to review the commission's denial of wage loss compensation prior to that date has no bearing on whether claimant is entitled to the compensation that was granted to her. Therefore, we sustain claimant's objections to the magistrate's decision on the basis that the commission did not abuse its discretion in awarding wage loss compensation beginning June 23, 2004. Furthermore, our disposition of claimant's objections to the magistrate's decision renders the commission's objections moot.
 {¶ 11} Following our independent review of this matter, we adopt the magistrate's findings of fact. However, being unable to agree with the conclusions reached by the magistrate, we do not adopt the magistrate's conclusions of law. We conclude that the commission did not abuse its discretion in awarding claimant wage loss compensation beginning June 23, 2004, as there is "some evidence" in the record that supports the commission's decision. On that basis, we sustain relator's objections to the magistrate's decision and conclude that a writ of mandamus should not be issued. Our disposition of claimant's objections renders the commission's objections moot. Having sustained claimant's objections to the magistrate's decision, we hereby deny the requested writ of mandamus.
Claimant's objections sustained; writ denied.
French and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Target Stores, : Relator, : v. : No. 05AP-744 Denise J. Blank and Industrial : Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on February 16, 2006 Bugbee Conkle, LLP, and Mark S. Barnes, for relator.
Joan H. Rife, for respondent Denise J. Blank.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 12} In this original action, relator, Target Stores, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding respondent Denise J. Blank ("claimant") R.C. 4123.56(B) wage loss compensation beginning June 23, 2004, and to enter an order denying said compensation.
Findings of Fact:
 {¶ 13} 1. On July 11, 2001, claimant sustained an industrial injury while employed as a "Level Three Supervisor" or "Team Leader" for relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "low back strain; lumbar back strain; segmental dysfunction of the S1 joint (left); left greater trochanteric bursitis; with left iliotibial band syndrome," and is assigned claim number 01-842703.
 {¶ 14} 2. On November 4, 2004, claimant moved for R.C.4123.56(B) wage loss compensation.
 {¶ 15} 3. In support of her motion, claimant submitted a medical report dated July 26, 2004, on a form that the Ohio Bureau of Workers' Compensation ("bureau") or commission requires to support a wage loss application. The medical report form was completed by treating chiropractor Michael A. Poitinger, D.C. Dr. Poitinger listed June 23, 2004 as the date of the last medical examination in response to the forms query.
 {¶ 16} In response to queries about restrictions, Dr. Poitinger wrote: "Limit Repetitive Bending, Lifting Twisting," and "Change Position As Needed."
 {¶ 17} The medical report form asks the reporting doctor to identify physical capacities by marking preprinted boxes corresponding to work activities. On the form, Dr. Poitinger indicated that during an eight-hour day, claimant can sit for eight hours, stand for eight hours, and walk for eight hours. However, she must be permitted to change positions as needed.
 {¶ 18} Dr. Poitinger also indicated that claimant cannot lift over 51 pounds but she can lift 26 to 50 pounds occasionally, and 21 to 25 pounds frequently.
 {¶ 19} The medical report form does not ask the doctor to state how many hours per day and per week claimant is able to work.
 {¶ 20} 4. Following a January 19, 2005 hearing, a district hearing officer ("DHO") mailed an order on January 25, 2005 that awards wage loss compensation beginning June 23, 2004. The DHO's order explains:
The Injured Worker has sustained a compensable Wage Loss as contemplated by O.R.C. 4123.56(B) as a sequelae of returning to work for the instant employer at alternative employment.
It is not contested that the Injured Worker [accepted] a demotion from Team Leader to the position of Operator in the Fall of 2003.
There is also a reasonable discussion regarding the cause for the demotion. The position of Operator guarantee's 40 hours per week and more regular hours than that of the former position of employment, which included management duties. The former position of employment also included more physical labor and extended periods of require[d] standing.
The District Hearing Officer finds that the Injured Worker isnot able to perform the entirety of the duties as a Team Leader.
Despite the understanding of the parties and the basic agreement as to the job duties, there is no medical opinion available for review at hearing that commences the physical restrictions until the evaluation by Dr. Pointinger [sic] on 6/23/2004.
Wage Loss Compensation is therefore payable from 6/23/2004 to present, and to continue upon submission of Wage Statements.
The diminution and earnings results from a lower hourly rate as an Operator.
The prior period noted on the Motion from 12/1/2003 through 6/22/2004 is DISMISSED without prejudice, due to lack of supporting medical evidence.
(Emphasis sic.)
 {¶ 21} 5. Relator administratively appealed the DHO's order.
 {¶ 22} 6. On January 25, 2005, Dr. Poitinger completed a C-140 medical report indicating that the last medical examination occurred January 3, 2005. The preprinted form instructs the physician that the report must be completed by the attending physician every 90 days if restrictions are temporary or every 180 days if restrictions are permanent. In response to the query as to the period of time covered by the report, Dr. Poitinger wrote: "9/1/03 to 1/1/04."
 {¶ 23} The C-140 form also asks the reporting physician to identify physical capacities by marking preprinted boxes corresponding to work activities. As he did in his prior medical report, noted above, Dr. Poitinger indicated that during an eight-hour day, claimant can sit for eight hours, stand for eight hours, and walk for eight hours.
 {¶ 24} The C-140 report, unlike the medical report dated July 26, 2004 afore-mentioned, asks the physician how many total hours per day and per week claimant is able to work. In response, Dr. Poitinger wrote: "6 Hours, 5 Days."
 {¶ 25} 7. On January 29, 2005, Dr. Poitinger completed another C-140 medical report also indicating that the last medical examination occurred January 3, 2005. This report states that it covers the period "1/1/04 to 6/22/04." Responses to the form's queries are essentially the same as the responses in the report dated January 25, 2005.
 {¶ 26} 8. Following a March 18, 2005 hearing, a staff hearing officer ("SHO") issued an order stating:
The order of the District Hearing Officer, from the hearing dated 01/19/2005, is MODIFIED to the following extent.
Therefore, the C-86 motion, filed 11/10/04, is GRANTED to the extent of this order.
The injured worker requests payment of wage loss compensation from December 1, 2003 to the present, and to continue upon submission of competent proof.
For clarification purposes, this Staff Hearing [Officer] finds jurisdiction to address all of the above periods of time as requested by the representatives at the hearing. The District Hearing Officer DISMISSED the period of time from December 1, 2003 through June 22, 2004, due to lack of medical evidence. The injured worker submitted medical evidence in the form of a C-140 form, completed by Dr. Poitinger on January 25, 2005, which covers the period of time from December 1, 2003, through June 22, 2004. Both parties requested that this Staff Hearing Officer address the merits of the injured worker's entitlement to wage loss compensation from December 1, 2003 through the present, and continuing.
By way of background, the injured worker has been employed with this employer from January 12, 1990, to the present. At the time of injury on July 11, 2001, the injured worker was working as a "Level Three Supervisor". She often worked 40 or more hours per week. Her hours were mixed and her schedule varied depending on the requirements of the work flow.
Subsequent to the injury, the injured worker was unable to return to the former position of employment for various periods of time. The file reflects that the injured worker was paid temporary total disability compensation from July 13, 2001 through July 18, 2001; and August 13, 2001 through February 17, 2002. The injured worker was also paid wage loss compensation from July 20, 2001 through August 12, 2001; and from February 18, 2002 through March 14, 2002.
The medical evidence in file reveals that the injured worker suffered from left hip pain, as well as lumbosacral pain, that was not present prior to the instant injury.
Effective, approximately December 1, 2003, the injured worker took a demotion from her job as a Level Three Supervisor (Team Leader) to the position of an "Operator". The position of operator allowed the injured worker to perform 40 hours of work per week on a more regular basis than her duties as a management employee. The injured worker testified at hearing that she took this demotion primarily because she was physically unable to perform her work at the former position of employment. The employer contends that the injured worker took the demotion voluntarily due to a life style change unrelated to this injury.
Considering the activity in this claim outlined above, and the long tenure of this employee, and the lack of any apparent problems prior to this injury, this Staff Hearing Officer does not find that the injured worker "voluntarily" took a demotion wholly unrelated to the allowed conditions in the instant claim. Clearly, the injured worker was having problems performing the former position of employment as noted by the several periods of wage loss compensation and temporary total disability compensation previously paid in this claim.
There is no contemporaneous medical documentation to support the injured worker's contention that she was unable to perform the former position of employment from December 1, 2003 through June 22, 2004.
Therefore, it is the order of this Staff Hearing Officer to DENY payment of wage loss compensation from December 1, 2003 through June 22, 2004. The C-140 form, submitted by Dr. Poitinger, allegedly covering restrictions for the period of time from December 1, 2003 through June 22, 2004, was not completed until January 25, 2005. There are no treatment records or reports contemporaneous to this period of time which would support Dr. Pointinger's [sic] retroactive opinion in this matter. As such, Dr. Poitinger's opinion, as expressed in the C-140 form, dated January 25, 2005, covering the period from December 1, 2003 through June 22, 2004, is not of probative value, and is not persuasive.
This Staff Hearing Officer finds that the injured worker has suffered a wage loss for the period of time from June 23, 2004 through the present, due to the allowed conditions in the instant claim. The medical restrictions of Dr. Poitinger reveal that the injured worker is unable to return to the former position of employment in management as a Team Leader due to residual restrictions flowing from the allowed conditions in this claim. Specifically, the reports of Dr. Poitinger, dated January 25, 2005, and July 26, 2004; and the treatment records of Dr. Poitinger, dated June 23, 2004 forward, reveal restrictions that prevent the injured worker from returning to the former position of employment that are causally related to the allowed conditions in the instant claim.
The injured worker has been working at a "Operator" job that does not require the same amount of standing, walking, or other physical activity as the former position of employment. She has been receiving a reduced income as a result of working as an operator.
It is the finding of this Staff Hearing Officer that the difference between the injured worker's wages at the time of her injury, and her earnings for the period of time from June 23, 2004, to present, were the result of a medical impairment causally related to the allowed conditions in the instant claim.
This Staff Hearing Officer further finds that the injured worker has otherwise complied with the requirements of O.A.C. 4125-1-01(C) and (D).
Therefore, it is the order of this Staff Hearing Officer to GRANT wage loss compensation, pursuant to O.R.C. 4123.56(B), and O.A.C. 4125-1-01 from June 23, 2004 to the present, and to continue upon submission of competent proof.
All evidence in file was reviewed and considered.
 {¶ 27} This order is based upon the treatment records of Dr. Poitinger; the C-140 form of Dr. Poitinger, dated January 25, 2005; the C-140 form of Dr. Poitinger, dated July 6, 2004; wage information in file submitted by the employer; and testimony provided at hearing.
(Emphasis sic.)
 {¶ 28} 9. On May 14, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of March 18, 2005.
 {¶ 29} 10. On July 18, 2005, relator, Target Stores, filed this mandamus action.
Conclusions of Law:
 {¶ 30} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 31} The medical inability to secure work comparable in pay to the former position of employment is a prerequisite for wage loss eligibility. State ex rel. Frederick v. Licking Cty. Dept.of Human Serv. (1998), 82 Ohio St.3d 227, 230; State ex rel.Williams-Laker v. Indus. Comm. (1998), 80 Ohio St.3d 694, 697;State ex rel. Pickett v. Indus. Comm. (1996),74 Ohio St.3d 679, 680; State ex rel. Chora v. Indus. Comm. (1996),74 Ohio St.3d 238, 241.
 {¶ 32} In her wage loss claim, claimant had the burden of proving that her decision to self-demote to the operator position on or about December 1, 2003, was caused or motivated by an inability to perform the level three supervisor job that she held on the date of injury. Thus, the key issue for the commission in adjudicating the wage loss claim was whether claimant was medically unable to perform the duties of her level three supervisor job at the time she decided to self-demote on or about December 1, 2003.
 {¶ 33} Clearly, under the circumstances here, a commission determination that claimant had failed to prove that she was medically unable to perform her level three supervisor job on or about December 1, 2003, would necessarily preclude wage loss compensation for the period beginning June 23, 2004, even if she could show that she was medically unable to perform comparably paying work as of June 23, 2004.
 {¶ 34} Under the circumstances here, the inability to perform comparably paying work as of June 23, 2004, cannot be the proximate cause of a reduction in wages that was earlier produced by claimant's self-demotion during December 2003.
 {¶ 35} Through Dr. Poitinger's medical report dated January 25, 2005, claimant did produce medical evidence of her physical capacities and her medical restrictions covering the period September 1, 2003 to January 1, 2004, a period that corresponds to her decision to self-demote. However, the commission specifically found that Dr. Poitinger's medical report dated January 25, 2005, was not probative nor persuasive as to the period of the wage loss claim prior to June 23, 2004.
 {¶ 36} The commission's finding that claimant had failed to produce probative medical evidence regarding her medical restrictions relevant to the time of her self-demotion precludes it from awarding wage loss compensation beginning June 23, 2004, in the absence of any evidence that there were changed circumstances that might justify holding that the voluntary self-demotion is no longer the cause of the reduction in wages as of June 23, 2004. See State ex rel. Pepsi-Cola Bottling Co. v.Morse (1995), 72 Ohio St.3d 210, 213-214. No such change of circumstances has been claimed by the claimant.
 {¶ 37} The commission's finding that Dr. Poitinger's medical reports reveal restrictions that would prevent claimant from returning to her level three supervisor job as of June 23, 2004, is irrelevant to the wage loss claim analysis.
 {¶ 38} Significantly, claimant did not administratively appeal the SHO's order of March 18, 2005 to the commission nor did she in this action, by counterclaim or otherwise, challenge the commission's denial of her wage loss claim for the period prior to June 23, 2004.
 {¶ 39} Clearly, unless the commission abused its discretion in denying wage loss compensation for the period December 1, 2003 to June 22, 2004, claimant is not entitled to wage loss compensation beginning June 23, 2004.
 {¶ 40} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order to the extent that wage loss compensation is awarded beginning June 23, 2004, and to enter an amended order denying the wage loss claim.
[1] Civ.R. 53 was amended, effective July 1, 2006. Pursuant to Civ.R. 86(CC), the new amendments to Civ.R. 53 "govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that their application in a particular action pending when the amendments take effect would not be feasible or would work injustice, in which event the former procedure applies."